**SIGNED.**

**Dated: June 09, 2009**



_____
**JAMES M. MARLAR**
**U.S. Bankruptcy Judge**
_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

In re:                                ) Chapter 7
                                      )
CAROL ANN FURZER,                     ) No. 4:08-bk-16879-JMM
                                      )
              Debtor.                 ) **MEMORANDUM DECISION**

A hearing was held on May 28, 2009, on the U.S. Trustee's motion to dismiss (DN 28) the Debtor's Chapter 7 case as a "substantial abuse." The U.S. Trustee was represented by Richard J. Cuellar; the Debtor was represented by Pernell W. ("James") McGuire. At the conclusion of the hearing, the court took the matter under advisement. After study of the law, the evidence and considering all of the facts of this case under a "totality of circumstances" analysis, the court now rules.

## ISSUE

Whether the Debtor, under the "totality of the circumstances," has demonstrated abuse by the choice to file a Chapter 7 petition. 11 U.S.C. § 707(a)(3)(B).

## PROCEDURE

The Debtor filed her Chapter 7 petition on November 21, 2008.

On January 16, 2009, the U.S. Trustee filed a notice that it believed the filing to be an abuse, under § 707(b). It followed that notice, a month later, by a motion to dismiss (DN 28). The court, then, noting the dispute to be of a type requiring the presentation of evidence, scheduled a hearing on May 28, 2009, at which each side ably presented their respective positions.

In the interim, the case proceeded apace, with the Debtor filing schedules and amended schedules, stay relief matters (DN 18, 25) progressing in the usual manner, and the occurrence of the § 341(a) meeting on January 9, 2009.

## **FACTS**

### **A. The Debtor's Income and Expenses**

In order to determine whether the Debtor is abusing the Bankruptcy Code, which loosely translated means obtaining a discharge rather than electing the "partial payback" method of Chapter 13, the court employs a "totality of the circumstances" test.

What makes that analysis more challenging here is that the Debtor is a higher earner than the typical filer. This complicates the analysis, because of various scenarios and moving parts.

The starting point is the Debtor's income and reasonable expenses, and determining whether there is, or should be, sufficient disposable income with which to fund a plan with a "meaningful repayment" to unsecured creditors.

The Debtor amended her schedules (DN 30, 40). Schedules I and J reflect the following monthly income and expenses:

| | | |
|---|---|---|
| **Income before "other" payroll deductions** | | $4,844.05 |
| **"Other" payroll deductions** | | |
| • SERP | $336.81 | |
| • SERP (401K loan) | 449.22 | |
| • SERP (401K loan) | 328.32 | |
| • Disability insurance | 79.91 | |

2

| | | |
|---|---:|---:|
| • UW-Arizona | 23.83 | |
| • Legal insurance | 20.50 | |
| • Supp AD&D | 3.88 | |
| **Total "other" payroll deductions** | (1,242.47) | |
| **Net income after "other payroll deductions** | | **3,601.58** |
| **Expenditures** | | |
| • Rent/mortgage | 1,067.00 | |
| • Electric/hearing | 275.00 | |
| • Water/sewer | 72.00 | |
| • Trash | 22.00 | |
| • Food | 400.00 | |
| • Clothing | 65.00 | |
| • Laundry/dry cleaning | 20.00 | |
| • Medical/dental | 20.00 | |
| • Transportation | 300.00 | |
| • Recreation | 130.00 | |
| • Charitable contributions | 20.00 | |
| • Insurance/homeowners or renters | 35.00 | |
| • Insurance/life | 15.00 | |
| • Insurance/auto | 100.00 | |
| • Installments/auto | 438.00 | |
| • Installments/student loan (Wells Fargo) | 142.00 | |
| • Installments/student loan (Nelnet) | 60.00 | |
| • Pet expenses | 60.00 | |
| • Auto maintenance/tags | 100.00 | |
| • Cell phone | 120.00 | |
| Average monthly expenditures | (3,461.00) | |
| **Monthly net income (disposable)** | | 140.58 |

# **THE CHAPTER 7 ANALYSIS**

The Debtor is 53 years old, single and with no dependents. She works as an engineering technician at Intel Corporation, where she has been steadily employed for over 16 years (Schedule I).

Although the Debtor owned two parcels of land in the Gold Canyon area of Pinal County, she has been forced to give up those properties to foreclosure. The stays have been lifted thereon (DN 18, 25), and the liens exceed the value of the properties (Schedule A). On the non-residential parcel, the Debtor could be exposed to a deficiency.

The only other real property which the Debtor owns is a half-acre parcel (unimproved) in Ridgeway, Colorado, which she values at $68,500, but which carries a $36,389 lien in favor of Wells Fargo Bank (Schedule A, D). In her Statement of Intention, the Debtor indicates that her intention is to surrender that lot back to the secured creditor. If sold, equity of $32,111 exists for creditors.

On the personal property side, the Debtor lists miscellaneous items, most of which have exemptions claimed (Schedule B, C). Items which are not exempt, and which could be liquidated for more than minimal value are:

|  | **Value** | **Secured Debt** | **Excess** |
|---|---|---|---|
| 2005 Toyota 4-Runner | 16,000 | 6,105 | $9,895 |
| 1992 Honda Accord | 1,825 | 0 | 1,825 |
| **Total** | | | **$11,650** |

Other property subject to sale are:

|  | **Value** |
|---|---|
| 6 shares of Intel stock | $90 |
| 52 shares of Motorola stock | 1,825 |
| **Total** | **$1,915** |

4

Thus, if the case continues in Chapter 7, a distribution to creditors would appear to be (assuming all values to be accurate):

| | |
|---|---:|
| Real property (Colorado) (equity) | $32,111 |
| 2005 Toyota (equity) | 9,895 |
| 1992 Honda | 1,825 |
| Stock (Motorola and Intel) | 180 |
| **Gross value** | **$44,011** |
| Less: Trustee's sale costs (12%) | (5,281) |
| Less: Trustee's fees (§ 326)[1] | (4,623) |
| **Available for distribution (unsecured creditors scheduled as $74,995)** | **$34,107** |
| Percentage return to creditors in Chapter 7[2] | 45% |

## THE CHAPTER 13 ANALYSIS
### A. The Schedules Scenario

In order to determine whether creditors will be better off in a lengthy Chapter 13 case, as the U.S. Trustee urges, the court now looks to what creditors might expect over a five-year commitment period.

In a Chapter 13, the Debtor's income and expenses must be considered. The first scenario would be from the Debtor's filed income and expense Schedules I and J.

From a gross monthly figure of $6,736 ($80,832 annually), the Debtor has a net take-home pay of $3,601. From the figure, the Debtor deducts regular average expenses of $3,461 (see

---

[1] Section 326 calculation on $38,730 available for distribution.

[2] This percentage could be higher if some creditors fail to file claims. But, if a deficiency balance exists on the non-residential Gold Canyon property, this percentage could also be negatively affected.

5

above for itemization).[3] If all aspects of the expense ledger are reasonable, which the court believes they are, the net disposable monthly income would be $140.

Over 60 months, this figure would add up to $8,400. After deduction of a 10% Chapter 13 trustee fee ($840), the unsecured creditors would share $7,560, a 10% dividend.

The U.S. Trustee notes, however, that the unsecured student loan payments, which are "preferred" non-dischargeable debts in the Debtor's Schedule J (totaling $202), would be paid pro-rata with other secured creditors in a Chapter 13, and not be paid with the Debtor's routine monthly bills. In addition, the U.S. Trustee deducts only the current 7.3% being paid as a fee to the Chapter 13 trustee. Using that analysis, the net disposable income figure increases by $202:

| Net take home | $3,601 |
| --- | --- |
| Less: Expenses (instead of $3,461) | (3,259) |
| | $342 |

That figure, multiplied by 60 months, equals $20,520. From that figure, a 7.3% deduction is taken for the Chapter 13 trustee ($1,498), leaving $19,022 to be divided amongst creditors with debts of $74,955. This would leave them with a 25% dividend.

The U.S. Trustee agrees that the current auto payment of $438 would be "included in the plan." But, it is still paid at the contract rate, and fully. There is no cramdown, so as a secured debt, it is fully paid ahead of the unsecured creditors, and not on a par with them.[4] Therefore, regardless of whether the car payment is made before or after the calculation of the disposable income to be paid over to the Chapter 13 trustee, the bottom line for the unsecured creditors remains the same. (*See* U.S. Trustee's Demonstrative Exhibit 8.)

---

[3] Although the $400 for food is high for a single individual, the Debtor explained that due to the hours of her job, she dines out frequently. This is reasonable under the circumstances.

[4] Even if the vehicle was not a 910-day purchase, and therefore subject to the cramdown, any unsecured balance would just be added to the other unsecured creditors, and the analysis would not be significantly changed.

## B. The Higher Earnings Scenario

The U.S. Trustee relies heavily on the contention that regular bonuses will increase the Debtor's income over the future five years. The Debtor, on the other hand, testified that such bonuses are discretionary, and the amounts are unpredictable. She further explained that in these difficult economic times, bonuses cannot be counted upon by the employees, nor can the amount be predicted in any meaningful way.

In the Debtor's Statement of Financial Affairs (DN #1, Ex. 2), the Debtor noted her income in prior years to be:

> 2006 - $73,025
>
> 2007 - $83,240

On the date of filing, November 21, 2008, the Debtor's year-to-date income was $68,673 (DN 1, Ex. 2, question 1). Thus, extrapolating through year end 2008, the Debtor might have made around $75,978 for that year. But, her actual pay stubs (Debtor's Ex. A) revealed that she earned, with bonuses, about $90,879 (pay period ending December 20, 2008.

And, those same pay stubs showed that, through May 8, 2009, the Debtor's gross pay for the year to date was $42,466. This would extrapolate, assuming everything stayed on the same basis through 2009, to an annual gross income of $127,398. But the net pay for the same period was $25,292.51, which by the same calculation would leave a net of $75,876 for the year, or $6,323 per month. This is actually <u>less</u> than the Debtor herself felt her net take home pay was each month, of $6,736 (Schedule I).

In any event, to predict income for calendar year 2009, in this difficult economy, using incomplete figures, is nothing more than speculation.

## CONCLUSION

Having considered all of the evidence, balanced the equities, and made the necessary calculations, the court concludes that unsecured creditors are better off in a Chapter 7 proceeding,

where they may be paid 45% of their debts <u>immediately</u>, as against receiving 25% of their debts over a five-year period. Due to the passage of time, a discount rate applied to the 25%, for having to wait years for their monies, would leave unsecured creditors in a much worse situation than they are today. Therefore, the court finds that this Chapter 7 does not constitute an abuse of the Bankruptcy Code. In fact, a Chapter 7 case appears to be of much greater benefit to the unsecured creditors.

Importantly, this Debtor could not confirm a Chapter 13 plan, because she could not pay her creditors more than they would expect to receive in a liquidation. 11 U.S.C. § 1325(a)(4). Because Chapter 13 would pay creditors less than a liquidation, over a much longer period of time, this leads to the inescapable conclusion that a Chapter 7 is best for the creditors, and that the Debtor can enjoy the fresh start which the Bankruptcy Code allows her.

Therefore, the U.S. Trustee's motion to dismiss will be DENIED, and the Debtor's case may continue as a Chapter 7 proceeding.

A separate order will be entered. FED. R. BANKR. P. 9021.

DATED AND SIGNED ABOVE.

Copies served as indicated below on the
date signed above:

Pernell W. McGuire
McGuire Gardner
320 N. Leroux, Suite a
Flagstaff, AZ 86001
Attorney for Debtor                   Email: pmcguire@mcguiregardner.com

Gayle Eskay Mills, Trustee
P.O. Box 36317
Tucson, AZ 85740                      Email: Gayle.Mills@azbar.org

Richard J. Cuellar
Office of the U.S. Trustee
230 N. First Ave., #204
Phoenix, AZ 85003-1706                Email: ric.j.cuellar@usdoj.gov


By     /s/ M.B. Thompson
        Judicial Assistant